UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| KELSEY LOVE, | ) |
| | ) |
| Plaintiff, | ) Civil. No. 3:18-cv-00023-GFVT |
| | ) |
| V. | ) |
| | ) **OPINION** |
| FRANKLIN COUNTY, KENTUCKY, | ) **&** |
| *et al.*, | ) **ORDER** |
| | ) |
| Defendants. | ) |
| | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

This is one of two recent cases involving pre-trial detention at the Franklin County Regional Jail.[1] The Plaintiff in this matter, Kelsey Love, gave birth alone and unassisted while in custody at the jail. The Defendants seek to resolve this case by way of a Motion to Dismiss. [R. 10.][2] This requires the Court to consider, for a first time, the teachings of the Supreme Court in *Kingsley v. Hendrickson*, a Fourth Amendment case, in the context of the Eighth and Fourteenth Amendments. 135 S. Ct. 2466 (2015). Ultimately, for the reasons set out below, the motion will be **DENIED**.

**I**

On May 15, 2017, Plaintiff Kelsey Love was incarcerated in Franklin County Regional Jail (FCRJ). [R. 9 at 5.] Love, a pretrial detainee, was eight months pregnant at the time. *Id.*

---

[1] *See Griffith v. Franklin County, Kentucky, et al.*, 3:16-cv-00077.
[2] Before Love filed her amended complaint, Defendants sought to dismiss her initial complaint. [R. 8.] That motion was mooted by the filing of the amended complaint; therefore, the Court will only address the arguments as stated in Defendants' later Motion to Dismiss. [R. 10.]

Because of her pregnancy, Defendants were under orders to observe Love every ten minutes. The Inmate Observation Record Love filed with Love's complaint, if believed, indicates the Defendants checked on her semi-regularly throughout May 15, 2017 and into the morning of May 16, 2017, though not every ten minutes, as instructed. [R. 1-1.] Love went into labor sometime during May 15, 2017. Somehow, despite frequent looking-ins, Love was allowed to give birth, unassisted and without medical care, in her jail cell. [R. 9 at 6.] When Defendant Phillips entered Love's cell at approximately 8:04 a.m. on May 16, 2017, Love's blood covered the floor. Love had completed labor and delivered a child. Only then was Love transported to Franklin Regional Medical Center. [R. 1-1.]

Love filed this action on May 7, 2018 and amended her complaint on June 9, 2018. Love named Franklin County, Rick Rogers, Michael Phillips, Anthony Pullen, Sergeant Harrod and four John Doe deputy jailers (collectively "individual Defendants") [R. 1; R. 9.] As amended, Love's complaint alleges various causes of action under both 42 U.S.C. § 1983 and Kentucky common law. [R. 9.] Namely, deliberate indifference, supervisory liability, *Monell* liability, and common law negligence. In addition, Love puts forth a new theory of liability under the Fourteenth Amendment, which she calls "intentional decision." [R. 9 at 8.] With this Count, she urges this Court to adopt a new standard for pretrial detainee medical care claims based on *Kingsley*. The Defendants have moved for dismissal under Rule 12(b)(6). [R. 10.] Defendants argue that Love has not pleaded the elements of her claims specifically enough to survive dismissal, and that even if she had, they are protected by qualified immunity. *Id.* For the following reasons, Defendants' Motion to Dismiss is **DENIED**.

## II

### A

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). The Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). See also *Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

Moreover, the facts that are pled must rise to the level of plausibility, not just possibility; "facts that are merely consistent with a defendant's liability . . . stop[ ] short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). According to the Sixth Circuit, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### B

Love alleges that the individual Defendants at FCRJ violated her constitutional rights by denying her medical care when she was in labor. [R. 1.] Such allegations are properly brought

under 42 U.S.C. § 1983.  Section 1983 does not create substantive rights but, rather, "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States...." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Mertik v. Blalock*, 983 F.2d 1353, 1359 (6th Cir.1993).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989) (additional citations omitted)).

The Constitution guarantees "a right to adequate medical treatment" for both convicted prisoners and pretrial detainees.  *Estelle v. Gamble*, 424 U.S. 97 (1976).  Until recently, the extent of this right has been the same for pretrial detainees and convicted prisoners.  To succeed on an action for deliberate indifference to medical needs, plaintiffs have been required to show: (i) an objectively substantial risk of serious harm, and (ii) that the jail or county officials were "subjectively aware of the risk." *Harbin v. City of Detroit*, 147 F. App'x 566, 570 (6th Cir.2005).  The Supreme Court, however, signaled in *Kingsley* that this universal test for both pretrial detainees and convicted prisoners' claims was misguided. *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015).  The Court's holding suggests that pretrial detainees no longer need to prove that the defendant had actual knowledge to succeed on the second prong of the deliberate indifference test.  Instead, a pretrial detainee need only show that the defendants "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Bruno v. City of Schenectady*, 727 Fed.Appx. 717,

4

720 (2018). That is, a pretrial detainee-plaintiff can succeed by pointing only to objective facts and without proving the defendant's mindset.

While *Kingsley* concerned only a pretrial detainee's Fourth Amendment excessive force claim, its holding has implications on all pretrial detainee's claims. In *Kingsley*, the Court only required the pretrial detainee show that "the force purposely or knowingly used against him was objectively unreasonable." *Kingsley,* 135 S.Ct. at 2473. To support a less stringent test, the Court cited: (i) precedent; (ii) workability; and (iii) the greater protections afforded by the Fourteenth Amendment. *Id.* These rationales extend to pretrial detainee claims for deliberate indifference. The court explains each in turn.

First, precedent supports using an objective test for pretrial detainee's claim of deliberate indifference. *Kingsley* itself was not focused exclusively to excessive force precedent. *Id.* To the contrary, the Court looked at challenges by pretrial detainees generally—identifying a challenge to double-bunking. *Id.* Only one conclusion can be drawn from the wide-net cast by the Court: its reasoning was not meant to be constrained to excessive force claims. Indeed, a challenge to double-bunking provides a closer analogue to a deliberate indifference claim than it does to an excessive force claim. *Id.* Unlike an excessive force claim, which focuses on the direct infliction of punishment, a conditions of confinement claim highlights the failure to provide a necessity. *Id.* Likewise, deliberate indifference claims seek damages for a failure to provide something necessary: health care. *Richmond v. Huq*, 885 F.3d 929 (6th Cir. 2018). Therefore, the Court's use of a pretrial double-bunking case supports an objective test for deliberate indifference to medical need claims.

Yet, this Court need not rely on simply reading the tea leaves of precedent. The Court in *Kingsley* used broad language to convey its holding. Focusing on pretrial detainees generally,

5

the Court reported that, to succeed, a pretrial detainee only needs to show that the government's actions were not "rationally related to a legitimate nonpunitive government purpose" or that the actions "appear excessive in relation to that purpose." Such language cannot be mistaken; *Kingsley* is meant to apply to all pretrial detainees. *Miranda v. County of Lake*, 900 F.3d 335, 351 (7th Cir. 2018); *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016).

Second, applying an objective standard to claims of deliberate indifference is workable. Experience belies any concerns that an objective standard will permit illegitimate claims to succeed. *Darnell v. Pineiro*, 849 F.3d 17, 36 (2nd Cir. 2017). Prior to *Farmer*, some courts in the Second Circuit used an objective test. *Id.* During this time the number of claims a court saw was not dependent on the test used. *Id.* And, in any event, the Prison Litigation Reform Act stands as a backstop against vexatious or illegitimate claims made by prisoner litigants. *Kingsley*, 135 S.Ct. at 2466.

Likewise, concerns that prison officials will lose their ability to maintain order and institutional security are simply unfounded. The objective standard still requires recklessness, not simple negligence. As a result, officers will not be handicapped in their ability to make quick judgments under unfavorable conditions. And, to the extent that illegitimate claims survive, *Kingsley* recognized that this factor is not enough to apply a subjective test. *Darnell*, 849 F.3d at 36. Constitutional rights do not cede to such rare occurrences or practical considerations.

Third, the Fourteenth Amendment affords pretrial detainees greater protections than those afforded to convicted prisoners by the Eighth Amendment. *Miranda,* 900 F.3d at 352. Unlike convicted prisoners, a pretrial detainee cannot be punished at all. *Id.* The Eighth Amendment, with its focus on impermissible punishment, merely sets the baseline of treatment. *Id.* A pretrial

detainee is guaranteed more. *Id.* Because they are held prior to a determination of guilt, they are presumed innocent. Punishment is not appropriate. *Id.* at 350. Since punishment is not the focus for evaluating liability, the testing of a claim must focus on objective conditions—not the mindset of the defendant. *Id.* at 353.

Defendants point out that this Court is bound by Sixth Circuit precedent. Of course they are correct, but the Sixth Circuit has not yet had occasion to consider whether the current deliberate indifference standard as applied to pretrial detainees ought to be amended in light of *Kingsley*. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018); *Hopper v. Phil Plummer*, 887 F.3d 744, 756 (6th Cir. 2018) (forfeited objective test at magistrate stage); *Bays v. Montmorency Cnty.*, 874 F.3d 264, 268 (6th Cir. 2017) (same); *Brown v. Chapman*, 814 F.3d 436, 444 (6th Cir. 2016) (same); *Baynes v. Cleland*, 799 F.3d 600, 618 (6th Cir. 2015) (same). In none of these cases was *Kingsley* directly addressed by the litigants. Nor was the same directly considered by the court itself. The only Sixth Circuit case to contemplate *Kingsley*'s foundational shift for pretrial detainees recognized that there is now "serious doubt whether" a plaintiff needs to "show that the individual defendant-officials were subjectively aware of [his] serious medical conditions and nonetheless wantonly disregarded them." *Richmond v. Huq*, 885 F.3d 929, n. 3 (6th Cir. 2018).

Continued use of the subjective test in other circuits is similarly unpersuasive. Each of these cases contains a dearth of reasoning, whether it is the Eighth Circuit's assertion without reason that *Kingsley* is limited to excessive force claims, or the Fifth and Eleventh Circuits' rote application of a circuit rule. *See Whitney v. City of St. Louis, Missouri,* 887 F.3d 857 (8th Cir. 2018); *see also Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272 (11th Cir. 2017); *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415 (5th Cir.

7

2017). None avails this Court. We must faithfully apply the Supreme Court's precedent regardless of rules peculiar to other circuits. To do that, this Court must apply the objective test to claims of deliberate indifference.

## C

Federal qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (citation and internal quotation marks omitted). When evaluating such claims, courts generally apply a two-step analysis. First, the court must consider whether "[t]aken in a light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Second, the court asks whether the right at issue was "clearly established." *Id.* "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen,* 543 U.S. 194, 199 (2004). "The burden of convincing a court that the law was clearly established rests squarely with the plaintiff." *Key v. Grayson,* 179 F.3d 996, 1000 (6th Cir.1999) (citation and internal quotation marks omitted). Although at one time courts were required to follow these steps sequentially, the Supreme Court has abandoned that position and now permits courts to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson,* 555 U.S. at 236. Here, Love's right to medical treatment for a serious medical need has been established since at least 1987. *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 545 (6th Cir. 2008).

8

**1**

In the first two Counts of her first amended complaint, Love alleges violation of her Fourteenth Amendment rights based on the "deliberate indifference" and what she calls "intentional decision[s]" of all individual Defendants in response to her medical needs. [R. 10 ¶¶ 33–44.] What Love is really advocating for with her "intentional decision" claim is for this Circuit to extend the rationale of *Kingsley* regarding pretrial detainee's excessive force claims to all § 1983 claims brought by pretrial detainees. As explained in part II.B. of this Order, the Court chooses to adopt the new, objective test for deliberate indifference as envisioned in *Bruno*, and will proceed with its analysis using that standard. Therefore, Love's amended complaint will survive defendants' motion to dismiss since, as explained, she pleads sufficient factual matter, accepted as true, that establishes (1) Love suffered a serious medical condition; and (2) the individual defendants "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Bruno v. City of Schenectady*, 727 Fed.Appx. 717, 720 (2nd Cir. 2018); *see also Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016); *Miranda v. County of Lake*, 900 F.3d 335, 351 (7th Cir. 2018).

**a**

A serious medical condition is apparent when the symptoms evidence a need for medical attention that is "so obvious that even a layperson would recognize" the need for help. *Blackmore v. Kalamazoo Cty.*, 390 F.3d at 899–900 (6th Cir. 2004) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir.1990)). Love was approximately eight months pregnant on the night of May 15, 2017. [R. 9.] Of course, "simply being pregnant—without

more—does not constitute a serious medical condition." *Webb v. Jessamine County Fiscal Court*, 802 F. Supp.2d 870, 878 (E.D. Ky. Aug. 5, 2011). However, "developments that require immediate attention can arise," and "certain circumstances may exist in any particular case which would provide the basis for determining that a woman's pregnancy was a serious medical need." *Id.* (internal quotations omitted); *Coleman v. Rahija*, 1996 U.S. Dist. LEXIS 21702, *17–18 (S.D. Iowa Jan. 2, 1996). Labor is one such development. *See Webb*, 802 F. Supp. 2d at 878.

Defendants argue that although Love alleges in her complaint that "it was obvious she was in labor," she has not plead specifically *why* her labor was obvious. [R. 14 at 5.] Because of this, Defendants argue her complaint is facially deficient. *Id.* The Court does not agree. In addition to stating that "it was obvious she was in labor," Love alleges that she was eight months pregnant, the Defendants knew she was eight months pregnant, and the Defendants were under instruction to monitor her condition every ten minutes. [R. 9.] Love alleges that, at various times throughout the night, several different defendants looked into her cell and were captured doing so by surveillance video. [R. 9, ¶¶ 7–10.] Additionally, the Inmate Observation Record, created and maintained by FCRJ, purports to establish that on numerous occasions throughout the night, Defendants checked on Ms. Love and documented her activity. [R. 1-1.] Lastly, Love alleges that Defendant Phillips entered her cell the morning of May 16, 2017 to find "a large amount of blood smeared on the floor across the entire cell," and an infant present in the cell with Love. [R. 9, ¶¶ 24–25.] This is enough. The Court does not need every graphic detail of what Love endured alone in her cell that night. Construing the complaint in light most favorable to Love, and accepting her allegations as true, the Court finds that Love has plead facts that allow the Court to infer she suffered a serious medical condition.

**b**

Love must also show that defendants "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Bruno v. City of Schenectady*, 727 Fed.Appx. 717, 720 (2nd Cir. 2018); *see also Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016); *Miranda v. County of Lake*, 900 F.3d 335, 351 (7th Cir. 2018). Under this new standard, Love does not need to prove the subjective mindset of the defendants.

At no point do the Defendants argue they actually rendered some sort of medical care to Love. [*See* R. 9; R. 10; R. 13.] The question, then, is whether Love has pleaded facts that allow the Court to infer that "the defendant-official[s] knew, or should have known, that the condition posed an excessive risk to health or safety." The Court finds that she has. As stated above, Love's complaint contains allegations that the Defendants were aware she was pregnant, were instructed to check in on her every ten minutes, and although they did not adhere to the ten minute time frame, did in fact check in on her several times throughout the night of May 15, 2017. [R. 9, ¶¶ 14–22.] She has also plead that her labor was obvious when they checked on her, and that her blood covered the jail cell floor. *Id.* Based on these facts, the Defendants knew or should have known that Love was in labor and required medical assistance. Love has adequately pleaded this element of her claim. Defendants' motion to dismiss is denied as to Count 1 an 2 of the complaint.

**2**

Love asserts a Fourteenth Amendment claim against Defendant Rogers, specifically, under a theory of supervisory liability. [R. 9 ¶¶ 45–49.] The doctrine of respondeat superior is

not available in § 1983 actions, and a supervisory defendant is only legally responsible for his or her own behavior. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Therefore, "a supervisory official's failure to supervise, control or train the offending individual is not actionable." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). At the very least, a Plaintiff must show that the supervisory-defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.*

It is already established that Love has successfully pleaded a violation of her constitutional rights. In addition, her complaint alleges "[a]fter the defendants looked in [her] cell when it was obvious she was in labor, they notified Rogers of their observations," and "Defendant Rogers . . . [was] aware of how the other individual defendants responded to and trained FCRJ staff to respond to FCRJ inmates with medical emergencies and intentionally chose not to intervene." [R. 9 ¶¶ 22, 28.] A failure to train is not actionable. However, the allegation that the other individual defendants notified Rogers that Love was in labor, and that Rogers did nothing to intervene, when construed in a light most favorable to Love and taken as true, establishes that Rogers "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee*, 199 F.3d at 300. Love has adequately pleaded this claim, and Defendants' motion is denied as to count three of the complaint.

### 3

Love also alleges violations of her Fourteenth Amendment rights by Franklin County and Defendant Rogers[3] under a theory of *Monell* liability. Generally, a local government may not be

---

[3] Love's amended complaint only names Defendant Rogers in his individual capacity. Because she is asserting a claim pursuant to *Monell*, the Court believes Love likely intended to sue Defendant Rogers in both his individual and official capacity. But "individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165

sued under § 1983 based on the actions of its employees or agents. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). The exception to that general rule, known as *Monell* liability, provides that a local government may be held liable where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen." *Bright v. Gallia County*, 753 F.3d 639, 660 (6th Cir. 2014).

Again, Love has established that her constitutional rights were violated, and the Defendants do not dispute that they operated under the color of state law. Therefore, this claim will survive a motion to dismiss if Love pleads "that a municipality's policy or custom caused that violation to happen." *Bright*, 753 F.3d 660. The amended complaint alleges that Franklin County and Defendant Rogers failed to adequately train, supervise, or discipline their employees. Specifically, Love alleges the Defendants were not trained on how to respond to medical emergencies among inmates. [R. 9, ¶ 51–54.] Further, it alleges that Franklin County and Defendant Rogers's failure to train was so pronounced that it "amounted to deliberate indifference that inaction would obviously result in the violation of the right to medical care or attention to medical needs." [R. 9, ¶ 53.]

This is a close call, but the Court finds that Love has adequately pleaded that there existed a custom within FCRJ such that "inaction would obviously result" when medical emergencies occurred. In *Leach v. Shelby County*, the Sixth Circuit found that a "sheriff's

---

(1985)). Therefore, Franklin County is the true defendant. The county is also named in this action, and therefore the official versus individual distinction is immaterial.

failure to supervise and correct the situation in view of the numerous similar incidents and his failure subsequently to punish the responsible individuals is more than sufficient evidence of a policy or custom to render the County liable for Leach's damages." 891 F.2d 1241, 1248 (6th Cir. 1989). Love has alleged both a complete lack of training and a failure to discipline FCRJ employees. Whether it's true training at FCRJ was really so inadequate that "inaction would obviously result" will certainly come to light in discovery or at trial. At this stage, Love is not required to prove her claim, only plead it. The Court finds that she has done so sufficiently enough to survive a motion to dismiss.

**4**

In the fifth and final count of the amended complaint, Love brings a claim of Kentucky common law negligence against all individual Defendants. [R. 9, ¶ 56.] In Kentucky, to establish negligence, a plaintiff must demonstrate the existence of a duty, breach thereof, and consequent injury, which includes "actual injury or harm to the plaintiff and legal causation between the defendant's breach and the plaintiff's injury." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003); *Mullins v. Commonwealth Life Insurance Company,* 839 S.W.2d 245, 247 (Ky. 1992). Kentucky law "imposes the duty on a jailer to exercise reasonable and ordinary care and diligence to prevent unlawful injury to a prisoner placed in his custody, but he cannot be charged with negligence in failing to prevent what he could not reasonably anticipate."

Despite the fact that Love was incarcerated pending trial, completely dependent on employees of FCRJ for care, the Defendants actually argue that Love "does not plead any facts that would allow this Court to determine if the Individual Defendants owed the Plaintiff a duty of care." [R. 10 at 13.] Their position is untenable. Kentucky law imposes a duty of care on the Individual Defendants by the nature of their relationship to Love. Love has pleaded, and the

Defendants have not disputed, that she was a pretrial detainee and the Defendants were her jailers. [R. 9, ¶¶ 2–13.] These facts, taken as true, establish that Defendants owed a duty of care to Love.

In addition to duty, Love must also plead that there was breach of that duty, and a resulting injury. To do so successfully, Love must plead more than a "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. The Court finds that she has done so. Love's amended complaint alleges that Defendants violated her Fourteenth Amendment rights because they knew she was pregnant, witnessed her undergoing labor and delivery, and failed to respond or obtain medical assistance. [R. 9, ¶¶ 14–32.] A factfinder could find that, based on these facts, the duty of care owed to Love was breached. The violation of her Fourteenth Amendment rights is the injury. Love satisfactorily pleads both of these elements in her amended complaint.

## 5

Fifth and finally, the individual Defendants assert that they are entitled to qualified immunity as to all claims raised in Love's amended complaint. The Court has already established that Love has pleaded a violation of her Fourteenth Amendment rights. *See* II.C.1–3, *supra*. A right to medical treatment for a serious medical need has been established since at least 1987, and labor is a serious medical need. *See Phillips v. Roane Cty. Tennessee*, 534 F.3d 531, 545 (6th Cir. 2008). Further, "that labor is inherently risky is well known." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, n. 5 (8th Cir. 2009) (en banc). A pretrial detainee's right to medical treatment is clearly established, both generally and specifically as it relates to Love's condition: childbirth. Every reasonable officer knows he is under an obligation to obtain medical help for

prisoners and pretrial detainees experiencing serious medical conditions. Accordingly the individual Defendants are not entitled to qualified immunity.

### III

Therefore, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant's Motion to Dismiss the Amended Complaint **[R. 10]** is **DENIED**;

2. Defendants' Motion to Dismiss the Complaint **[R. 8]** is **DENIED AS MOOT**.

This the 27th day of March, 2019.

Gregory F. Van Tatenhove
United States District Judge