UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| KELSEY LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No: 3:18-cv-00023-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| FRANKLIN COUNTY, KENTUCKY, *et al.* | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| Defendant, | ) | |
| | ) | |
| V. | ) | |
| SOUTHERN HEALTH PARTNERS, INC., | | |
| Third-Party Defendant. | | |

*** *** *** ***

Before the Court are cross-motions for summary judgment filed by Defendant and Third-Party Plaintiff Franklin County, Kentucky and Third-Party Defendant Southern Health Partners, Inc. (SHP). [R. 97; R. 99.] For the reasons that follow, Franklin County's Motion is DENIED, and SHP's Motion is GRANTED.

**I**

Kentucky administrative regulations require Franklin County to contract with a health care provider licensed in Kentucky to provide medical services at Franklin County Regional Jail (FCRJ). 501 K.A.R. 3:090(1). Franklin County contracts with Chattanooga-based company Southern Health Partners, Inc. (SHP) for that purpose. [R. 98-1.] The parties' relationship is governed by the Health Services Agreement. [R. 97-1 at 2; R. 99-1 at 3.] At issue here is § 8.3 of that agreement, which provides:

>       Hold Harmless.  SHP agrees to indemnify and hold harmless the Jailer, the
> County, their agents, servants and employees from and against any and all claims,
> actions, lawsuits, damages, judgments or liabilities of any kind whatsoever arising
> out of the operation and maintenance of the aforesaid program of health care
> services conducted by SHP, it being the express understanding of the parties
> hereto that SHP shall provide the actual health care services.  The Jailer shall
> promptly notify SHP of any incident, claim or lawsuit of which the Jailer becomes
> aware and shall fully cooperate in the defense of such claim, but SHP shall retain
> sole control of the defense while the action is pending, to the extent allowable by
> law.
>       County does hereby agree to indemnify and hold harmless SHP, its agents,
> servants, employees and medical staff from and against any and all injuries,
> claims, actions, lawsuits, damages, judgments or liabilities of any kind
> whatsoever arising out of the operation of the facility and/or the negligence of the
> Jailer, the County, or their agents, servants and employees, to the extent
> authorized and permitted by law.

[R. 32-1.]

Sometime during the early morning hours of May 16, 2017, Plaintiff Kelsey Love gave birth to a son, alone and unmedicated, locked in a cell within FCRJ. [R. 36.]  She filed suit in May, 2018 and named Franklin County, Kentucky, Jailer Rick Rogers, and several deputy jailers employed by FCRJ as defendants. [R. 1; R. 36.]  Love asserted claims of deliberate indifference pursuant to 42 U.S.C. § 1983 against Franklin County, Kentucky and all individual defendants. [R. 36.]  Love also raised a claim of supervisory liability against Jailer Rick Rogers for failure to remedy his staff's noncompliance with FCRJ emergency medical protocols.  *Id.*  Love further alleged Rogers and Franklin County are liable pursuant to *Monell* for failure to train.  *Id.*  Finally, Love has alleged a state law negligence claim against all defendants based upon their failure to exercise ordinary care.  *Id.*  Love has never raised any claim against SHP or its employees, and no SHP employees were at the jail when Love gave birth.

In September, 2019, Franklin County moved for leave to file a third-party complaint against SHP, which the Court granted. [R. 25; R. 31.]  The third-party complaint rests on the presumption that "[a]t its core, this case involves the sufficiency of the medical services that

2

Plaintiff Kelsey Love received while incarcerated at the Franklin County Regional Jail[.]" [R. 120 at 1.] Franklin County SHP must indemnify it from Love's claims because "SHP was contractually responsible for providing Love with these services." *Id.*

Thus, Franklin County's third-party complaint raises two claims against SHP. Count 1 seeks contractual indemnity from SHP, and Count 2 alleges breach of contract. [R. 32.] More specifically, Franklin County alleges that "[b]ecause Plaintiff's alleged injuries arise out of health care services SHP was contractually obligated to provide pursuant to the Services Agreement, SHP is contractually obligated to indemnify, defend, and hold harmless Franklin County, Jailer Rogers, and its employees and agents from Plaintiff's claims." *Id.* at ¶ 21. Franklin County alleges SHP breached its obligation under this contract by "fail[ing] and expressly refus[ing] to indemnify Franklin County for Plaintiff's claims in this action." *Id.* at ¶ 30.

SHP disputes these claims. SHP argues "indemnity is required to the extent that SHP provides healthcare services that result in a liability for the Jail," but that "the liability that Plaintiff attempts to impose on the Jail is not based upon any act or omission of SHP[.]" [R. 99-1 at 16.] Thus, SHP believes it is not required to indemnify Franklin County because "the Health Services agreement does not require that SHP indemnify the Jail for liabilities it incurs due to the jails own intentional or negligent actions[.]" [R. 99-1 at 15.] Because it is not required to indemnify the jail, SHP argues it did not breach the health services agreement as alleged in Count 2.

## II

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

3

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden is initially on the moving party to inform "the district court of the basis of its motion, and [to identify] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of a material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, the nonmoving party, "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Further, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Instead, "the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

**A**

A contract must be construed as a whole, if possible, by giving effect to all parts and words in it. *Cantrell Supply, Inc. v. Liberty Mutual Insurance Co.*, 94 S.W.3d 381, 384–85 (Ky. 2002). Interpretation of a contract, including whether the contract is ambiguous, is a question of law for the courts to decide. *Id.* at 385; *Morganfield National Bank v. Damien Elder & Sons*,

836 S.W.2d 893, 895 (Ky. 1992). Without existence of an ambiguity, the Court must determine the parties' intentions from the four corners of the document, without assistance of extrinsic evidence. *Cantrell*, 94 S.W.3d at 385. A contract is ambiguous if it is susceptible to inconsistent reasonable interpretations. *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 905 (Ky. 1994).

The parties dispute whether the indemnity provision covers the facts of this case, whether the obligation to indemnify includes an obligation to defend, and whether Franklin County's claim for indemnification is ripe considering they have not yet incurred liability as to Love's claims. [*See* R. 97; R. 99.] The foremost consideration is whether the indemnity clause applies to this case; *i.e.*, whether Love's claims "aris[e] out of the operation and maintenance of the aforesaid program of health care services conducted by SHP[.]" [R. 32-1, § 8.3.]

On that point, the contract is not ambiguous. In fact, the parties agree that § 8.3 should apply—and SHP should indemnify Franklin County—where medical care provided by SHP results in "claims, actions, lawsuits, damages, judgments or liabilities[.]" [R. 32-1, § 8.3.] SHP says as much in its motion for summary judgment: "Indemnity is required to the extent that SHP provides healthcare services that result in a liability for the Jail." [R. 99-1 at 16.] Franklin County apparently agrees, as it spends the bulk of its motion for summary judgment arguing Love's claims in fact arise from healthcare provided by SHP. [*See* R. 97-1.]

Franklin County argues Love's claims are "arising out of" SHP services because "(1) SHP contracted with the county to provide medical, dental, and health care to individuals incarcerated at the FCRJ;" and "(2) the scope of SHP's duties included care for incarcerated individuals who were pregnant up to and through the birthing process[.]" *Id.* at 6. Franklin County reasons that because SHP is "solely and completely responsible for providing pregnancy related care to individuals who are incarcerated at the FCRJ," and because "all five of Plaintiff's

5

claims relate, in one way or another, to what she perceives as inadequate medical care," then "[t]his means that the actions and inactions of which she complains relate directly to duties borne solely by SHP," and "if there were failures in the course of Plaintiff's incarceration at the FCRJ, they related to SHP's medical decision-making." [R. 99-1 at 7–8.]

Franklin County has said that "[a]t its core, this case involves the sufficiency of the medical services that Plaintiff Kelsey Love received while incarcerated at the Franklin County Regional Jail[.]" [R. 120 at 1.]  This is specious.  Love alleges that Franklin County, jailer Rick Rogers, and the individual deputy jailers were deliberately indifferent to a substantial risk of serious harm to her person, in violation of her Fourteenth Amendment rights.  [R. 36.]  Love faced a substantial risk of serious harm when she was made to labor and ultimately deliver her son without medical care or supervision while a pretrial detainee at FCRJ.  The Franklin County defendants may escape liability if a jury finds they "responded reasonably to the risk, even if the harm ultimately was not averted."[1]  *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

It seems obvious that in this case a "reasonable response" would have been to obtain medical care for Love—perhaps by calling a SHP provider[2] or summoning an ambulance.  So Love's claims do have some relation to medical care—and the fact that she didn't receive any— but they are premised on the Franklin County defendants' failure to obtain it for her, not on any failure of SHP to provide it.  *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) ("Prison officials' deliberate indifference violates [inmates' Fourteenth Amendment] rights when the indifference is manifested by prison guards in intentionally denying or delaying

---

[1] For the sake of completeness, it is also possible some or all of the Franklin County defendants may prevail against Love's claims if the jury finds they were unaware of the substantial risk of harm to Love.  *See Farmer*, 511 U.S. at 844.

[2] Of course, deputy Brandi Upton did precisely this.  But regardless of whether that was sufficient to absolve her of liability, and even if SHP's advice for monitoring Love's condition was unsound, this fact does not change the nature of the claim asserted in Plaintiff's complaint.

6

access to medical care for a serious medical need." (cleaned up)).

In other words, Love seeks to hold the Franklin County defendants liable for their own acts and omissions, not for poor medical care on the part of SHP. Franklin County's duty to provide medical care to Love and all FCRJ inmates is not abrogated by virtue of a contractual agreement with SHP to provide medical services. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 705 (11th Cir. 1985) ("[G]overnments, state and local, have an obligation to provide medical care to incarcerated individuals. This duty is not absolved by contracting with an entity such as Prison Health Services.") (internal citations omitted)). Simply put, Franklin County may not transmogrify Love's case into a medical malpractice action in order to trigger the indemnity clause of the Health Services Agreement.

### III

Kelsey Love's claims are not "arising out of the operation and maintenance of the . . . program of health care services conducted by SHP." Franklin County's argument and the assumptions it is based upon, though artful, are incorrect. Therefore, § 8.3 of the Health Services agreement is not triggered, and SHP need not indemnify Franklin County against Love's claims. Because § 8.3 does not encompass this case, the Court need not determine whether there is a related duty to defend, nor whether SHP has breached in refusing indemnity.

Accordingly, it is hereby **ORDERED** that Franklin County's Motion for Summary Judgment **[R. 97]** is **DENIED**, and SHP's Motion for Summary Judgment **[R. 99]** is **GRANTED**.

This the 14th day of August, 2020.

Gregory F. Van Tatenhove
United States District Judge